IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SANDOZ INC. | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 20-3538 |
| | : | |
| LANNETT COMPANY, INC. | : | |

McHUGH, J.                                                                                                   November 4, 2021

**MEMORANDUM**

This matter involves claims of unfair competition and tortious interference between two pharmaceutical companies. The parties return with a discovery dispute rooted in issues of attorney-client privilege, one of which is when the "common interest" privilege can be asserted. This is exclusively a diversity action, and the various issues before the Court must therefore be resolved applying Pennsylvania precedent, including *BouSamra v. Excela Health,* 210 A.3d 967 (Pa. 2019), a recent decision of some significance.

   I.   **Factual and Procedural Background:**

The factual posture of the case is important to an understanding of the privilege issues. Plaintiff Sandoz had contracted with Cediprof, a drug manufacturer, to serve as the exclusive distributor and marketer of Cediprof's levothyroxine sodium tablets until July 31, 2022. On July 3, 2019, Cediprof signed an agreement with a rival distributor, Lannett, which provided that upon the termination of Sandoz's rights, Cediprof would transition its levothyroxine rights to Lannett. ECF 21-2. In July 2019, Sandoz communicated to Cediprof that it intended to transfer its right to distribute Cediprof's levothyroxine to Aurobindo, an Indian pharmaceutical company. ECF 100-31, Ex. 10. On June 19, 2020, Cediprof terminated its agreement with Sandoz, claiming Sandoz

had defaulted on its obligations. ECF 95-17. Lannett then began distribution of levothyroxine on August 1, 2020, two years earlier than it had expected under the original agreement.

Sandoz responded by filing suit against Cediprof in federal court and pursuing arbitration. It separately commenced this action against Lannett, alleging that Lannett had wrongfully induced Cediprof's cancellation of the agreement. Lannett responded with a counterclaim against Sandoz, averring that Sandoz has engaged in tortious interference and unfair competition. In July 2020, Lannett retained Kirkland & Ellis LLP, which also represents Cediprof. ECF 95-1 at 18; ECF 100 at 6.

Plaintiff Sandoz now moves to compel production of documents over which Defendant Lannett asserts attorney-client privilege or common interest privilege. I previously granted in part and denied in part Plaintiff's Motion to Compel and ordered a subset of documents be produced for *in camera* inspection to determine if any privilege applies (ECF 101, 105). Having carefully reviewed those documents, I conclude that some documents are privileged, while others are not.

**II.     Choice of Law:**

As noted in my Order Granting in Part and Denying in Part Plaintiff's Motion to Compel, Pennsylvania law applies to this discovery dispute. ECF 101, at n.1. "In a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. The Third Circuit has further reiterated that where the claims and defenses arise under state law, "Federal Rules of Evidence 501 and 1101(c) provide that we should apply state law in determining the extent and scope of the attorney-client privilege." *Rhone–Poulenc Rorer v. Home Indem. Co.*, 32 F.3d 851, 861 (3d Cir. 1994); *see also Samuelson v. Susen*, 576 F.2d 546, 549 (3d Cir. 1978) (stating that "Rule 501 requires a district court exercising diversity jurisdiction to apply the law of privilege which would be applied by the courts of the state in which it sits.").

Because Sandoz's complaint invoked this Court's diversity jurisdiction and the parties' claims arise solely under Pennsylvania law, its privilege rules must be applied. For many years federal courts have been required to fill gaps in Pennsylvania privilege law and have understandably done so by looking to federal precedent. But the persuasive authority of those cases must be carefully re-evaluated where Pennsylvania law has been clarified.

### III.  Discussion

#### A.  **Attorney-Client Privilege in Pennsylvania**

In Pennsylvania, the attorney-client privilege is codified as follows: "In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client." 42 Pa. C.S. § 5928. In 2019, the Pennsylvania Supreme Court re-examined the contours of attorney-client privilege. *BouSamra v. Excela Health,* 210 A.3d 967 (Pa. 2019). A party invoking attorney-client privilege must prove that:

> 1) [t]he asserted holder of the privilege is or sought to become a client[;]
> 2) [t]he person to whom the communication was made is a member of the bar of a court, or his subordinate[;]
> 3) [t]he communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort[;]
> 4) [t]he privilege has been claimed and is not waived.

*Id.* at 983. The Supreme Court had previously made clear that as to the third factor—the communications at issue must be made for the purposes of securing legal advice—"the privilege does not extend to business advice or protect clients from factual investigations." *Gillard v. AIG Ins. Co.,* 15 A.3d 44, 52 n.8 (Pa. 2011).[1] If this four-part test is satisfied, the burden shifts to the

---

[1] Federal decisions likewise recognize that not all communications that include an attorney render a communication privileged. *See Kramer v. Raymond Corp.,* No. CIV. 90-5026, 1992 WL 122856, at *1 (E.D. Pa. May 29, 1992) ("Because in-house counsel may play a dual role of legal advisor and business

3

party seeking disclosure to explain why the communication should not be considered privileged.[2] *Id*. For corporations, "the attorney-client privilege 'extends to communications between its attorney and agents or employees authorized to act on the corporation's behalf.'" *Id.* (internal citation omitted).

      a.   Documents Protected by Attorney-Client Privilege: Direct Attorney Communication

Here, documents **3, 588, 622, 626, 824 and 826** are clearly protected by attorney-client privilege under Pennsylvania law. Each of the above are internal communications among Lannett employees and in-house or outside counsel for the purpose of legal advice. The privilege is being claimed and there is no evidence of waiver. Therefore, these documents are protected by the attorney-client privilege and need not be produced.

      a.   Documents Not Protected by Attorney-Client Privilege: Absence of Attorney

Document **46** is an email chain among only Lannett employees with no counsel copied passing on legal advice from outside counsel. Document **512** involves only Lannett non-attorney employees and is not for the purposes of legal advice. As no attorney is present on these communications, these email chains fail to satisfy the second prong that the communication be made to an attorney or their agent, and thus, are not protected by the attorney-client privilege.

---

advisor, the privilege will apply only if the communication's primary purpose is to gain or provide legal assistance. Business communications are not protected merely because they are directed to an attorney, and communications at meetings attended or directed by attorneys are not automatically privileged as a result of the attorney's presence.").

[2] In its summary of the requirements of attorney-client privilege, *BouSamra* is consistent with earlier precedent from the Superior Court. *See e. g., Com. v. Mrozek,* 657 A.2d 997, 998 (Pa. Super. Ct. 1995) (listing the same four factors); *Nationwide Mut. Ins. Co. v. Fleming,* 924 A.2d 1259, 1264 (Pa. Super. Ct. 2007), *aff'd* 992 A. 2d 65 (Pa. 2010) *abrogated on other grounds, Gillard v. AIG Ins. Co.*, 15 A.3d 44 (Pa. 2011) (same); *see also Gocial v. Indep. Blue Cross*, 827 A.2d 1216, 1222 (Pa. Super. Ct. 2003) ("First and foremost is the rule that the privilege applies only to confidential communications made by the client to the attorney in connection with providing legal services.").

Documents **649** and **829** involve email chains that have final emails between Lannett businesspeople only. For **649**, the earlier email and the attachment need not be produced, as they are privileged. Admittedly in this instance, production of the final email is a mere formality, as the forwarding lacks any meaningful content in the absence of the prior email and attachment. Technically, however, it is not privileged and must be produced. For **829**, the final email must be produced, as no attorney is copied, while the earlier emails with counsel copied may be redacted.

### B. Waiver of Attorney-Client Privilege through Disclosure to Third Parties:

Attorney-client privilege will not ordinarily attach to communications made in the presence of a third party, and disclosing privileged communications to a third party waives the privilege. *Id*. at 982. In *BouSamra,* the Pennsylvania Supreme Court recognized an exception to waiver for third parties whose "presence was either indispensable to the lawyer giving legal advice or facilitated the lawyer's ability to give legal advice to the client." *Id*. at 985. In so doing, the Court reiterated that evidentiary privileges—such as the attorney-client privilege—are "highly disfavored in Pennsylvania," so "the scope of such [third-party] situations must remain narrowly tailored." *Id.* at 986 n.15*; see also Off. of Disciplinary Couns. v. Baldwin,* 225 A.3d 817, 850 (Pa. 2020) (noting that it is an "established proposition that evidentiary privileges are not favored because they are in derogation of the truth-determining process."). The facts of *BouSamra* illustrate the limited nature of the exception. There, the Court found that the attorney-client privilege was waived when an email from outside counsel was forwarded by in-house counsel to an employee of its outside consultant communications firm. 210 A.3d at 986.

    a. <u>Documents Protected by Attorney-Client Privilege: No Waiver Despite Involvement of Third Party</u>

In considering documents where a third party is present on communications, I apply the test from *BouSamra*: attorney-client privilege will be waived unless the third party's "presence

5

was either indispensable to the lawyer giving legal advice or facilitated the lawyer's ability to give legal advice to the client." *Id*. at 985.

Documents **297** and **357** are email chains involving Robert Jaffee, an outside third-party communications consultant. Lannett offers no explanation why Mr. Jaffee's presence is indispensable for legal advice and provides no substantive argument as to his role or necessity. Nevertheless, it is patent from the face of these two documents that legal advice is in fact involved: Mr. Jaffee is sending his work product for attorney comment and the attorney is responding with comments related to legal strategy, which Jaffee incorporates. The consultant here is an active participant, as opposed to the passive consultant in *BouSamra* who merely received an email from counsel. In *BouSamra*, the Court noted that a situation may arise where a third party was necessary for legal advice, "in instances [that] unlike the present matter, involve *soliciting* advice or input from a public relations firm." 210 A.3d at 986, n.15 (emphasis in original). Although the situation here is slightly different, as it is the consultant, not the attorney, who is soliciting legal advice, the obvious active engagement between the attorney and consultant for the purpose of legal advice persuades me that these communications are protected and the privilege is not waived.

      b. <u>Documents Not Protected by Attorney-Client Privilege: Waiver through Disclosure to Third Parties</u>

Documents **618** and **143** are email chains where Mr. Jaffee sends a draft for comment. Unlike **297** and **257**, Jaffee largely receives feedback from business executives on these chains. While the attorney is copied and there is limited attorney input, the communications appear business related and no legal advice is apparent from the face of the chains. Lannett has failed to meet its burden as to these documents, providing no explanation of Mr. Jaffee's necessity to the provision of legal advice. Therefore, Mr. Jaffee's presence waives any privilege as to these documents.

Similarly, documents **645** and **804** are emails with two outside financial advisors. Lannett has provided no explanation as to why the advisors' presence was necessary for legal advice. Further, Lannett does not appear to be soliciting their advisors' input to facilitate legal advice. Therefore, any claim of attorney-client privilege has been waived as to these documents.

Documents **19, 699, 729,** and **770** have an unidentified third-party email address, dbradley023@gmail.com, copied on the communications. In the key provided by Lannett,[3] this email was not identified as a Lannett or Cediprof employee or as counsel for either party. Lannett, the party seeking to invoke the privilege, bears the burden of showing that privilege was not waived. *See Se. Pennsylvania Transp. Auth. v. Caremarkpcs Health*, L.P., 254 F.R.D. 253, 259 (E.D. Pa. 2008) ("It is important for the party seeking to assert the privilege to "identify [a] specific attorney with whom a confidential communication was made" in order to satisfy this burden.") (internal citation omitted). It has not carried its burden. With no evidence to the contrary, I assume that Bradley is a third party. Moreover, as there is no indication that Bradley's presence was to facilitate legal advice, I hold that any claim to privilege as to these documents has been waived.

Similarly, Documents **204, 234, 911** and **962** copy astrea.ocampo@psicofarma.com.mx, who is not identified in the key as a Lannett or Cediprof employee or as counsel for either party.[4] In addition, the communications appear commercial in nature. *See Gillard,* 15 A.3d at 52 n.8.

---

[3] Lannett included a partial key of the "third parties and attorneys implicated in these documents" to assist the court in its *in camera* review. Bradley was among those **not** identified.

[4] From context, as well as Sandoz's Motion to Compel, it appears that this email may belong to a Cediprof employee. *See* Sandoz Mot. to Compel, ECF 95-1 at 16 referring to "Astrea Ocampo. . . at Cediprof." However, Lannett has not met its burden to establish a status that would give rise to privilege. Moreover, even if the email does belong to a Cediprof employee, any privilege as to these communications would still be waived under the common interest privilege discussed *infra* at Part C(b) because no counsel from Cediprof is copied on the communications.

Any privilege that might have attached has been waived through disclosure to an unidentified third party.  Document **235** appears to be the attachment to **234**, so privilege is also waived.

### C. The Common Interest Privilege in Pennsylvania:

Lannett further claims that it properly withheld documents that it shared with its partner, Cediprof, on the basis that they are protected by the common interest privilege.  The common interest privilege "function[s] as an exception to the general rule that disclosure of information to third parties constitutes a waiver of the attorney-client privilege."  *In re Fortieth Statewide Investigating Grand Jury*, 191 A.3d 750, 763 (Pa. 2018).  The Supreme Court has referred to the doctrine with apparent approval: "federal courts recognize that the common interest and joint defense privileges extend into the grand jury setting, and we have no reason to conclude those privileges should be denied to those involved with grand jury proceedings in Pennsylvania," *id.*; the "joint-client or common-interest privilege could potentially apply" to a situation involving co-defendants, *Karoly v. Mancusco*, 65 A.3d 301, 315 (Pa. 2013).  There are, however, no decisions from the Supreme Court defining the reach of the doctrine.

The Commonwealth Court has held that a party seeking to invoke the common interest doctrine must show:

> (1) the parties' agreement to same; (2) a common-interest in the litigation or a jointly shared litigation strategy; (3) the communications were made pursuant to such agreement, and (4) the continued confidentiality of the communications, i.e., the communications were not disclosed to other third parties such that the privileges were waived.

*PPUC v. Sunrise Energy, LLC,* 177 A.3d 438, 445 (Pa. Commw. Ct. 2018).  The Pennsylvania courts have not addressed whether an express written agreement is required to establish the

privilege.[5] Federal courts applying the privilege appear to assume that no written agreement is necessary.[6] Assuming that to be so, the question here is twofold: whether Cediprof and Lannett shared a common interest, and whether the privilege was waived.

    a. Common Legal Interest:

In determining the scope of the common interest privilege, Pennsylvania courts have drawn upon federal law to conclude that "a shared common business interest or an interest that is solely commercial is insufficient to warrant application of the privilege." *In re Condemnation by City of Philadelphia*, 981 A.2d 391, 398 (Pa. Commw. Ct. 2009)[7] (citing *Katz v. AT & T Corp.*, 191 F.R.D. 433 (E.D. Pa. 2000)). A prerequisite for application of the privilege is that the parties share a common *legal* interest. *Id.* The Commonwealth Court did not precisely define what is required, but observed that, standing alone, "[e]vidence that these parties supported each other's separate efforts by sharing information and/or legal strategy is *not* evidence that the two shared a common legal interest." *Id.* at 399. (emphasis in original).

In the absence of definitive guidance from Pennsylvania courts, district courts have once again looked to federal caselaw. *See Audi of America Inc. v. Bronsberg & Hughes Pontiac*, 255 F.Supp. 3d 561, 570 (M.D. Pa. 2017) (noting that "[i]n the absence of substantial guidance from

---

[5] *See Young v. Presbyterian Homes, Inc.,* 50 Pa. D. & C.4th 190, 200 n.1 (Com. Pl. 2001) (declining to address whether an express or implied agreement is necessary, while also noting that counsel would be "well-advised" to prepare an agreement).

[6] *See e. g. In re Teleglobe Communications Corp*, 493 F.3d 345 (3d Cir. 2007) (no discussion of written agreement being required); *see also Rosser Int'l, Inc. v. Walter P. Moore & Assocs.,* Inc., No. 2:11-CV-1028, 2013 WL 3989437, at *19 (W.D. Pa. Aug. 2, 2013) (stating that "an express written agreement is not required to establish these [joint defense or common interest] privileges under Pennsylvania law," while also recognizing it as best practice to memorialize agreement in writing); *United States v. Trombetta,* No. CRIM. 13-227-01, 2015 WL 4406426, at *20 (W.D. Pa. July 20, 2015) ("A written agreement is not required in order to establish a common interest endeavor.").

[7] In its seeming endorsement of the common interest privilege in *Karoly*, 65 A.3d at 315, the Pennsylvania Supreme Court cited *In re Condemnation by City of Philadelphia*, 981 A.2d at 398.

Pennsylvania's own courts, the Court looks to decisions from the other courts that have addressed the scope of the privilege, and its application"). The leading Third Circuit case on the common interest privilege is *In re Teleglobe Communications Corp*, 493 F.3d 345 (3d Cir. 2007).[8] In describing the burden of the party asserting privilege, the Court held that "members of the community of interest must share at least a *substantially similar* legal interest." *Id.* at 365. (emphasis added). This includes "a litigated or nonlitigated matter" and extends to even a "non-party to any anticipated or pending litigation." *Id.* (internal citation omitted).

Sandoz claims that Lannett and Cediprof lacked a common interest until Sandoz filed suit in July 2020, as the parties' interest before suit "was simply in negotiating a contract to begin after the Sandoz-Cediprof Agreement expired in 2022 and transitioning the levothyroxine product from Sandoz to Lannett—primarily commercial endeavors." ECF 95-1, at 23. Lannett responds that it has not invoked the common-interest privilege to withhold any documents or communications between Cediprof and Lannett regarding the negotiation of the Lannett Agreement. ECF 100, at 1. The line it draws is July 2019, "following the execution of the Lannett Agreement, once Lannett and Cediprof had common legal interests pertaining to Sandoz's threatened breach of the Sandoz Agreement by way of the Aurobindo Transaction." *Id.*

---

[8] *Teleglobe* applied Delaware rather than Pennsylvania law. But because the Circuit couched its analysis in broad principle not exclusive to Delaware law, courts generally have applied its principles in deciding Pennsylvania privilege issues. *See e.g. CAMICO Mut. Ins. Co. v. Heffler, Radetich & Saitta, LLP*, No. CIV.A. 11-4753, 2013 WL 315716, at *1 (E.D. Pa. Jan. 28, 2013) ("While Teleglobe was a case applying Delaware law, its discussion of the common-interest doctrine was not so limited. The Third Circuit engaged in a contemplative analysis of the purpose, history, and requirements of the common-interest doctrine, without much reference to Delaware law at all.... In fact, *Teleglobe* has been cited by courts around the country as the leading opinion on the common-interest doctrine.") (quoting *Hoffmann-La Roche, Inc. v. Roxane Labs.,* Inc., 2011 WL 1792791, at *6 n.6 (D.N.J. May 11, 2011)). *See also Serrano v. Chesapeake Appalachia*, LLC, 298 F.R.D. 271, 284 (W.D. Pa. Mar. 6, 2014) ("*Teleglobe* has become a leading opinion in these areas [the common interest and co-client doctrines] and provides persuasive authority as to Pennsylvania law."); *Gelman v. W2 Ltd.*, No. CV 14-6548, 2016 WL 8716248, at *3 (E.D. Pa. Feb. 5, 2016) (same).

I conclude that upon signing the July 2019 Lannett Agreement, Lannett and Cediprof had a substantially similar legal interest with respect to legal strategy involving claims by Sandoz.  In that regard, Sandoz has alleged that Lannett and Cediprof conspired together to concoct reasons to terminate the Sandoz agreement.  In the July 3, 2019 agreement with Cediprof,  Lannett agreed to "reimburse Cediprof for thirty percent (30%) of legal fees incurred by Cediprof in connection with any engagement with the current distributor [Sandoz] regarding transition or termination of the current distribution agreement."  Lannett Agreement, Art. II §2.02, ECF 21-2.  This supports the conclusion that their legal interests were aligned after the July 2019 agreement with respect to handling Sandoz, as does the fact that both Cediprof and Lannett anticipated litigation.

      b. <u>Waiver of the Privilege:</u>

As the parties shared a common legal interest, the common interest privilege will apply if it was not waived.  The parties dispute what constitutes waiver, with Sandoz arguing that counsel from both parties must be present to apply the privilege, ECF 95-1 at 21-22, and Lannett asserting that the privilege could apply to communications solely between parties that share a common interest, as well as between one party and the other party's counsel.  ECF 100 at 14-15.

When discussing the common interest privilege in *In re Condemnation,* the Commonwealth Court relied upon *Young v. Presbyterian Homes, Inc.*, 50 Pa. D. & C.4th 190 (Pa. Com. Pl. 2001), an opinion authored by respected trial Judge Alan Black of Lehigh County.  *Young* preserves the attorney-client privilege in common interest cases where (1) the client makes a statement in the presence of their attorney and counsel to another entity; and (2) where the client makes a statement to an agent of their attorney for the purposes of legal advice.  Though some language in *Young* could be read to suggest that any participation by an attorney will suffice, Judge Black's ultimate conclusion was that "courts should not impede their efforts by withdrawing the

protection of the attorney-client privilege for statements made in the presence of *both counsel*." *Id*. at 199. (emphasis added). In similar fashion, another respected Pennsylvania trial judge found the privilege available "to co-defendants and their lawyers working collectively." *Exec. Risk Indem., Inc. v. Cigna Corp.*, 81 Pa. D. & C.4th 410 (Com. Pl. 2006) (Bernstein, J.). These cases from Pennsylvania courts strongly favor the conclusion that least one attorney must participate for the privilege to apply.

The language employed by the Third Circuit in *Teleglobe* also suggests a requirement of attorney participation. The Court stated that "the community-of-interest privilege allows attorneys representing different clients with similar legal interests to share information without having to disclose it to others." 493 F.3d at 364. "To be eligible for continued protection, the communication must be shared with the *attorney* of the member of the community of interest." *Id.* "Sharing the communication directly with a member of the community may destroy the privilege." *Id.* The Circuit also reasoned that "[t]he attorney-sharing requirement helps prevent abuse by ensuring that the common-interest privilege only supplants the disclosure rule when attorneys, not clients, decide to share information in order to coordinate legal strategies." *Id.* at 365.

Following *Teleglobe*, a Pennsylvania district court permitted disclosure of communications where attorneys were not involved. *Gelman v. W2 Ltd.,* No. CV 14-6548, 2016 WL 8716248, at *5 (E.D. Pa. Feb. 5, 2016) (applying Pennsylvania law and examining *Teleglobe* to conclude the privilege "shields only communications or correspondence as between attorneys representing different clients, and not between the separately-represented clients themselves"). Similarly, in *MobileMedia Ideas* v. *Apple,Inc.* 890 F.Supp.2d 508, 515 (D. Del. 2012), a Delaware district court noted that "to qualify for and to maintain the privilege, the communications must be shared between counsel, and not just between the clients." *See also e.g. Gallo v. PHH Mortgage Corp.*,

No. 12-1117-NLH-KMW, 2016 WL 7423188, at *1 (D. NJ. June. 9, 2016) (holding privilege can be claimed only if documents meet attorney sharing requirement).

Lannett points to several district court decisions that find no requirement of attorney participation in *Teleglobe*. The best example is *TD Bank, N.A. v. Hill*, 2014 WL 12617548, at *3 (D.N.J. Aug. 20, 2014), where the court held that "despite the broad language in *In re Teleglobe*, the Court finds that the COI doctrine may apply to communications outside of direct attorney-to-attorney communications." *Id*. In so holding, the court observed that the Third Circuit has acknowledged that its discussion of community of interest in *Teleglobe* was "surplusage," *i.e. dicta*. *Id*. The *Hill* court also argued that the Circuit "did not specifically discuss the issue of whether the COI doctrine is only limited to attorneys", and cited with approval the Restatement (Third) of the Law Governing Lawyers, § 76, which does not limit the doctrine to just attorneys.[9] *Id.*

In choosing between these competing views of *Teleglobe* and a requirement of attorney participation, I turn back to Pennsylvania law. The common interest privilege is not a standalone privilege; rather, it operates as an "as an exception to waiver" of the attorney-client privilege. *Pennsylvania Pub. Util. Comm'n.*, 177 A.3d at 445. The Pennsylvania Supreme court has repeatedly admonished that exceptions to waiver are to be construed narrowly under Pennsylvania law. Moreover, the *BouSamra* Court reiterated that one of the elements of attorney-client privilege is that the person to whom the communication is made "is a member of the bar of a court or his subordinate." 210 A.2d at 983; *see also Gillard.*, 15 A.3d at 59 (holding that the "attorney-client

---

[9] Comment d of the Restatement §76 is more expansive. It allows for the privilege for any member of a client set, which includes the client, client's agent, client's lawyer, and lawyer's agent, to exchange communications with members of a similar client set. The Pennsylvania Supreme Court cited § 75-76 in its brief mention of the common interest privilege in *Karoly v. Mancuso,* 65 A.3d 301, 315 (Pa. 2013), but did not formally adopt it or discuss Comment d.

13

privilege operates in a two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice.") The Court recognized that for a corporation, the privilege "extends to communications between its attorney and agents or employees authorized to act on the corporation's behalf," but an attorney necessarily remains a part of the equation. 210 A.2d at 983. I therefore conclude that Lannett's expansive interpretation is inconsistent with Pennsylvania precedent. I decline to follow *TD Bank* and hold instead that an attorney must be involved for the common interest privilege exception to attach.

There is less clarity as to whether attorneys for *both* parties must be involved in the exchange. Cogent arguments can be advanced on either side of the issue. In the absence of clear guidance from Pennsylvania appellate courts, I default to the overarching principle emanating from the Supreme Court, that exceptions to disclosure are to be construed narrowly. Accordingly, where both parties were not represented by counsel in an exchange of information, I find the privilege waived.

      c. <u>Documents Protected by Common Interest Privilege:</u>

Documents **456, 459-61, 503-08,** and **877** involve attorneys from both Lannett and Cediprof and appear to be legal in nature. These documents are from the period between July 2019 and July 2020, during which Lannett and Cediprof shared a common legal interest. These documents are protected under the common interest privilege exception and need not be produced.

Document **787** is an email chain in which the early emails discuss legal matters and involve counsel from both Cediprof and Lannett. These emails and accompanying attachment are subject

to the common interest privilege and may be redacted. However, the final emails are between Lannett employees only and must be produced.

Document **341** and **515** are the same email chain. The initial emails are between Lannett and Cediprof counsel and are clearly within the ambit of the common interest privilege. However, there is a later email in the chain from Cediprof businessperson to a Lannett businessperson without counsel copied. The early emails with counsel are protected and may be redacted, but the last email in the chain must be produced.

        d.   <u>Documents Not Protected by Common Interest Privilege:</u>

Documents **95, 516-19,** and **523** are emails from July 2020 between Lannett and Cediprof employees without any counsel present. These documents are not subject to the common interest privilege, as the attorney sharing requirement is not met.

Document **796, 462-63, 486, 488,** and **778** are emails between Cediprof employees and Lannett employees and counsel. At issue here is whether the common interest privilege applies where counsel from only one party is copied. **796** is legal in nature, as it describes legal invoices, while **462-63, 486, 488,** and **778** involve scheduling a meeting to discuss legal strategy, but no substantive strategy is discussed. The communications do not fully meet the attorney sharing requirement, so will not be protected.

        e.   <u>Miscellaneous Documents Not Protected:</u>

Documents **212, 458, 730, 771, 813-15, 819** and **820** are presentations with either no cover email or no "to" in the cover email. In the log provided, the document authors and custodians are non-attorney Lannett employees or third-party consultant Mr. Jaffee. There are no attorneys

identified with these documents, so Lannett has failed to meet its burden to establish attorney-client privilege. Therefore, these documents must be produced.

## IV. Conclusion

For the reasons set forth above, Plaintiff's Motion to Compel will be granted in part and denied in part. An appropriate order follows.

/s/ Gerald Austin McHugh
United States District Judge
